1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                            ----oo0oo----

11

12   RYAN M. HUCKINS, JR., an          No. 2:24-cv-01492 WBS CSK
     individual,
13
                Plaintiff,
14                                      MEMORANDUM AND ORDER RE:
        v.                              DEFENDANT'S MOTION FOR
15                                      SUMMARY JUDGMENT
     AMAZON.COM SERVICES LLC; and
16   DOES 1 through 50, inclusive,

17              Defendants.

18
                              ----oo0oo----
19

20         Plaintiff Ryan Huckins, Jr. filed this employment

21   discrimination action in state court against defendant Amazon,

22   alleging (1) disability discrimination in violation of

23   California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't

24   Code § 12900 et seq.; (2) failure to provide an accommodation in

25   violation of FEHA; (3) failure to prevent discrimination in

26   violation of FEHA; (4) wrongful termination in violation of

27   public policy; and (5) intentional infliction of emotional

28   distress.  (Compl. (Docket No. 1-2).)  Defendant removed to this

                                  1

1  court based on diversity jurisdiction.  (Docket No. 1.)

2  Defendant now moves for summary judgment.  (Docket No. 12.)

3  I.    Factual Background

4           Plaintiff worked as a fulfillment associate at one of

5  defendant's warehouses beginning in August 2021.  (See Baker

6  Decl. (Docket No. 12-4) ¶ 6.)  The fulfillment associate position

7  involved scanning, sorting, and transporting packages and had a

8  productivity quota.  (Id. ¶¶ 7-8.)  Plaintiff received multiple

9  write-ups in 2022 and 2023 for failing to meet the productivity

10 standards.  (Id. ¶ 9.)

11          In October of 2022, plaintiff, who was previously

12 diagnosed with schizophrenia, requested reasonable accommodations

13 related to that condition.  (Huckins Decl. (Docket No. 13-2) ¶¶

14 4-5.)  Specifically, plaintiff requested an alteration to the

15 productivity requirements, which defendant declined to provide.

16 (See Knepfler Decl. (Docket No. 12-5) ¶ 14.)  Defendant attempted

17 to place plaintiff in a different department, but plaintiff

18 remained unable to meet the productivity requirements.  (See id.

19 ¶ 13.)

20          On April 7, 2023, plaintiff's supervisor initiated a

21 drug test of plaintiff based on suspicion of marijuana use.

22 (Baker Decl. ¶ 11.)  Plaintiff tested positive for marijuana and

23 was terminated on May 4, 2023 for violation of defendant's Drug

24 and Alcohol Policy.  (Id. ¶¶ 12-13.)

25 II.   FEHA Claims

26     A.    Disability Discrimination

27          "To establish a prima facie case of disability

28 discrimination under FEHA, a plaintiff must show '(1) he suffers

                                   2

1  from a disability; (2) he is otherwise qualified to do his job;

2  and, (3) he was subjected to adverse employment action because of

3  his disability.'" Yphantides v. Cnty. of San Diego, 660 F. Supp.

4  3d 935, 956 (S.D. Cal. 2023) (quoting Faust v. Cal. Portland

5  Cement Co., 150 Cal. App. 4th 864, 886 (2d Dist. 2007)).

6         "If the employer presents admissible evidence that one

7  or more of plaintiff's prima facie elements is lacking, or that

8  the adverse employment action was based on legitimate,

9  nondiscriminatory factors, the employer will be entitled to

10  summary judgment unless the plaintiff produces admissible

11  evidence which raises a triable issue of fact material to the

12  defendant's showing." Washington v. Cal. City Corr. Ctr., 871 F.

13  Supp. 2d 1010, 1021 (E.D. Cal. 2012) (quoting Caldwell v.

14  Paramount Unified School Dist., 41 Cal. App. 4th 189, 203 (2d

15  Dist. 1995)).  "The employee can satisfy [his] burden by

16  'producing substantial responsive evidence that the employer's

17  showing was untrue or pretextual.'" Id. (quoting Dep't of Fair

18  Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 746 (9th Cir.

19  2011)) (quotation altered).

20         Defendant has provided evidence that plaintiff's

21  termination was based on a legitimate, nondiscriminatory reason.

22  The policies in place during plaintiff's employment provided that

23  "[e]mployees are prohibited from reporting to work or working if

24  the employee uses any illegal or unauthorized substances, which

25  include any drug that is unlawful to use or possess as a matter

26  of federal, state, or local law." (Ex. 4 to Baker Decl. (Docket

27  No. 12-4 at 20-25) at 1.)  The policy stated that employees could

28  be required to submit to a drug test based on "reasonable

3

1    suspicion," which includes "the presence of an odor that suggests

2    that the employee is using drugs."  (Id. at 3.)

3           Defendant subjected plaintiff to a reasonable suspicion

4    drug test on April 7, 2023, which his supervisor Oliver Obreno

5    said was initiated because plaintiff smelled like marijuana.

6    (See Ex. 5 to Baker Decl. (Docket No. 12-4 at 27-32).)  Plaintiff

7    admits that he had smoked marijuana "approximately five to six

8    hours before" his shift that day.  (Huckins Decl. ¶ 11.)

9    Plaintiff tested positive for marijuana and defendant terminated

10   him on May 4, 2023 for the stated reason that he had used

11   marijuana in violation of company policy.  (Baker Decl. ¶ 13.)

12   In the absence of any connection between plaintiff's disability

13   and his marijuana use,[1] violation of the company's drug policy

14   constitutes a nondiscriminatory reason for plaintiff's

15   termination.  See Shepherd v. Kohl's Dep't Stores, Inc., No.

16   1:14-cv-01901 DAD BAM, 2016 WL 4126705, at *5-6 (E.D. Cal. Aug.

17   2, 2016) (granting summary judgment on FEHA claim in favor of

18   employer who terminated disabled employee based on positive

19   marijuana test).[2]

20          Because defendant has carried its burden to provide a

21   legitimate reason for plaintiff's termination, the burden shifts

22

     _____

23        [1]    Defendant's drug policy allows employees to use medical
     marijuana in compliance with California state law.  (See Ex. 5 to
24   Baker Decl. at 2.)  Plaintiff does not contend that he was using
     medical marijuana.
25

26        [2]    The California Legislature amended FEHA, effective
     January 1, 2024, to bar discrimination based on off-duty cannabis
27   use.  See Cal. Gov't Code § 12954(a)(1).  This provision is
     inapplicable to plaintiff's termination, which predates the
28   effective date of the amendment.

1    to plaintiff to "demonstrate pretext in either of two ways: (1)

2    directly, by showing that unlawful discrimination more likely

3    than not motivated the employer; or (2) indirectly, by showing

4    that the employer's proffered explanation is unworthy of credence

5    because it is internally inconsistent or otherwise not

6    believable." <u>Washington</u>, 871 F. Supp. 2d at 1026 (quoting <u>Earl</u>

7    <u>v. Nielsen Media Rsch., Inc.</u>, 658 F.3d 1108, 1112-13 (9th Cir.

8    2011)).

9              Plaintiff has failed to rebut defendant's showing for

10   several reasons.  First, plaintiff's opposition to defendant's

11   motion was filed in violation of the rules of this court.  Local

12   Rule 230(c) requires that opposition to a motion be filed within

13   fourteen days.  Plaintiff's counsel filed his opposition brief

14   thirty-five days following defendant's motion -- a full three

15   weeks late -- without seeking leave from this court to file an

16   opposition or acknowledging his error.[3]  Given counsel's

17   disregard for the court's rules, the court is entitled to

18   construe plaintiff's failure to timely oppose as non-opposition

19   to defendant's motion.  <u>See</u> L.R. 230(c) ("A failure to file a

20   timely opposition may also be construed by the Court as a non-

21   opposition to the motion.").

22   _____

23        [3]    At oral argument, based upon an outdated version of the
     Local Rules that used to require the opposition to a motion be
24   filed twenty-one days prior to the hearing date, plaintiff's
     counsel attempted to argue that his filing was timely.  The
25   problem with that argument is that the provision counsel relied
     upon was removed from the relevant local rule when the current
26   version was adopted three years ago.  <u>See</u> E.D. Cal. Gen. Order
     No. 645.  Counsel's failure to familiarize himself with the
27   court's current rules does not excuse his failure to comply with
     them.
28

                                    5

1    Second, even if the court disregards counsel's

2    procedural neglect and considers plaintiff's briefing on the

3    merits, plaintiff fails to raise a genuine dispute of fact

4    concerning pretext.  The only evidence plaintiff provides is a

5    declaration, which states that plaintiff "firmly believe[s]" his

6    termination "did not result from any legitimate violation of

7    company policy but rather from retaliation and discrimination

8    based on my disability and my consistent, good-faith efforts to

9    seek reasonable accommodations."  (Huckins Decl. ¶ 15.)  However,

10   no corroborating details or evidence are provided to support that

11   alleged belief.  The declaration states that Mr. Obreno "was

12   aware of [plaintiff's] condition and requested accommodations"

13   (see id. ¶ 12), but plaintiff admits his assertion that Mr.

14   Obreno knew of his condition is "speculati[on]" (see Huckins Dep.

15   (Docket No. 12-3 at 4-35) at 95:21-96:10).  Plaintiff states that

16   as a result of his disability, Mr. Obreno "became distant and

17   less communicative" and plaintiff "no longer felt supported by

18   him," but does not point to any specific conduct or incidents.

19   (See Huckins Decl. ¶ 12.)  Plaintiff also states that Mr. Obreno

20   sought to have plaintiff removed from his shift, which could have

21   been the result of either plaintiff's poor productivity or

22   "possibly due to his discomfort with [plaintiff's] medical

23   condition."  (Id. ¶ 15.)

24       Given that plaintiff admitted to using marijuana on the

25   day of the drug test (id. ¶ 11), plaintiff's declaration does not

26   support an inference that the drug test or resulting termination

27   were pretextual.  Rather, it provides nothing more than "a few

28   bald, uncorroborated, and conclusory assertions rather than

6

1    evidence" concerning the alleged discriminatory animus underlying

2    his termination.  <u>See</u> <u>F.T.C. v. Neovi, Inc.</u>, 604 F.3d 1150, 1159

3    (9th Cir. 2010).

4         The circumstances surrounding the events at issue

5    likewise do not support plaintiff's allegation of discrimination.

6    Plaintiff first requested accommodations on October 27, 2022, and

7    the drug test was initiated on April 6, 2023 -- more than five

8    months later.  (<u>See</u> Huckins Decl. ¶¶ 5, 11.)  This attenuated

9    temporal connection alone does not suggest pretext.  <u>See</u> <u>Kama v.</u>

10   <u>Mayorkas</u>, 107 F.4th 1054, 1062 (9th Cir. 2024) (a "five-month

11   gap" between plaintiff's employment complaint and alleged

12   retaliatory action by employer "without more, places it at only

13   the outer bounds of relevance").  Further, plaintiff's

14   communications concerning accommodations were made with the

15   Disability and Leave Services ("DLS") department.  (<u>See</u> Huckins

16   Decl. ¶¶ 5-10.)  There is no evidence before the court to suggest

17   that Mr. Obreno, or either of the two "neutral" managers involved

18   in the drug testing process (<u>see</u> Baker Decl. ¶ 11), had any

19   involvement in or knowledge of plaintiff's accommodation request.

20   To the contrary, the declarations provided by defendant explain

21   that DLS does not share information concerning employees'

22   disabilities or accommodations with managers or local human

23   resources personnel.  (<u>See</u> Baker Decl. ¶ 5; Knepfler Decl. ¶ 5.)

24        For the foregoing reasons, plaintiff has failed to

25   rebut defendant's showing that the termination was non-

26   discriminatory, and defendant is entitled to summary judgment on

27   the first claim alleging disability discrimination under FEHA.

28

7

1    B.   Failure to Accommodate

2         FEHA makes it unlawful "for an employer . . . to fail

3  to make reasonable accommodation for the known physical or mental

4  disability of an applicant or employee."  Cal. Gov't Code §

5  12940(m).  "The elements of a prima facie claim for failure to

6  make reasonable accommodation [] are: (1) the plaintiff has a

7  disability covered by FEHA[4]; (2) the plaintiff is qualified to

8  perform the essential functions of the position; and (3) the

9  employer failed to reasonably accommodate the plaintiff's

10 disability."  Achal v. Gate Gourmet, Inc., 114 F. Supp. 3d 781,

11 798 (N.D. Cal. 2015) (citing Scotch v. Art Inst. of Cal.—Orange

12 Cnty., Inc., 173 Cal. App. 4th 986, 1010 (4th Dist. 2009)).[5]

13        It is undisputed that plaintiff was unable to meet the

14 productivity requirements of the fulfillment associate position.

15 Defendant contends that the productivity requirement was an

16 essential function of the fulfillment associate position (as well

17 as all other available positions at the warehouse), and therefore

18 plaintiff was not qualified to perform those jobs.

19        A "reasonable accommodation 'does not require an

20 employer to exempt an employee from performing essential

21 functions.'"  Lucent, 642 F.3d at 744 (quoting Dark v. Curry

22 Cnty., 451 F.3d 1078, 1089 (9th Cir. 2006)).  Essential functions

23 ─────────────────────

24      [4]   The parties agree that plaintiff has a disability
   covered by FEHA.

25      [5]   Under FEHA, a failure to accommodate claim differs from
26 a discrimination claim "in that an adverse employment action need
   not be shown, nor is any showing of a causal nexus between one's
27 disability and an adverse employment action required."  Achal,
   114 F. Supp. 3d at 798-99 (quoting Jensen v. Wells Fargo Bank, 85
28 Cal. App. 4th 245, 255-56 (2d Dist. 2000)).

                              8

are "the fundamental job duties of the employment position the individual with a disability holds or desires." Cal. Gov't Code § 12926(f)(1). A job function may be considered essential for several reasons, including that the reason the position exists is to perform that function, there are a limited number of employees who can perform that function, or the function is highly specialized. <u>Lui v. City & Cnty. of San Francisco</u>, 211 Cal. App. 4th 962, 971-72 (1st Dist. 2012) (citing Cal. Gov't Code § 12926(f)(1)). "Evidence of 'essential functions' may include the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the consequences of not requiring employees to perform the function, the terms of a collective bargaining agreement, the work experiences of past incumbents in the job, and the current work experience of incumbents in similar jobs." <u>Atkins v. City of Los Angeles</u>, 8 Cal. App. 5th 696, 717-18 (2d Dist. 2017), <u>as modified on denial of reh'g</u> (Mar. 13, 2017) (citing Cal. Gov't Code § 12926(f)(2)).

After plaintiff initiated his request for accommodations in October 2022, DLS sought more information from plaintiff. (<u>See</u> Huckins Decl. ¶ 5; Knepfler Decl. ¶ 7.) Plaintiff requested either a transfer to a different position or a reduction in productivity expectations. (<u>See</u> Knepfler Decl. ¶ 8; Huckins Dep. at 116:15-117:8.) DLS informed plaintiff that it "cannot alter rate or productivity," and plaintiff "will still be subject to meeting [the quota] no matter the accommodation." (Ex. 13 to Knepfler Decl. (Docket No. 12-5 at 20).)

In December 2022, DLS approved a trial placement in the "Pack" department. (Huckins Decl. ¶ 9; Huckins Dep. at 120:9-

1   21.)  However, plaintiff found that placement more difficult and

2   was unable to meet the productivity requirement of that position

3   as well.  (See Huckins Dep. at 120:9-121:5.)  In February 2023,

4   plaintiff requested that he be returned to his original role, but

5   was instead reassigned to the "BOD" department, which plaintiff

6   again found to be more difficult than his original role.  (See

7   Huckins Decl. ¶ 10.)  Plaintiff acknowledges that he was unable

8   to satisfy the productivity requirements of any of these

9   positions.  (See id. ¶¶ 8-10.)

10          Defendant provides a declaration from a human resources

11  manager, which states that "[m]eeting productivity expectations

12  is an essential function of the fulfillment associate position"

13  that is "established by Amazon's central operations team and

14  . . . applied uniformly across all fulfillment associates."

15  (Baker Decl. ¶ 8.)  Defendant also provides records of feedback

16  sent to plaintiff throughout his employment indicating that his

17  job performance was "not meeting Productivity expectations,"

18  which are a "critical component" of plaintiff's job.  (Ex. 3 to

19  Baker Decl. (Docket No. 12-4 at 14-18).)

20          Even construing the facts in the light most favorable

21  to plaintiff, all evidence before the court tends to support

22  defendant's position that the productivity quota -- which

23  plaintiff could not satisfy -- was an essential job function of

24  both plaintiff's original position and the available alternative

25  positions.  Plaintiff makes no attempt to provide any evidence,

26  or even bare argument, to rebut the assertion in the Baker

27  Declaration that productivity was an essential function of the

28  fulfillment associate position.  (See Baker Decl. ¶ 8.)

10

1    Plaintiff's declaration provides no facts that bear on the
2    questions of whether productivity was an essential function or
3    whether plaintiff was qualified for any other specific position.
4    (See generally Huckins Decl.)  Plaintiff's opposition brief also
5    fails to directly address the issue, instead merely stating that
6    plaintiff "was capable of performing the job with reasonable
7    accommodations" without any supporting evidence or authority.
8    (See Opp'n at 11-12.)

9         Because plaintiff "admitted that [he] could not perform
10    the responsibilities of the position that [he] last held, or of
11    the other positions that [he] had held," and "failed to point to
12    any specific vacant position to which [he] could have been
13    reassigned," defendant is entitled to summary judgment on this
14    claim.  See Ceja-Corona v. CVS Pharmacy, Inc., 664 F. App'x 649,
15    650 (9th Cir. 2016); see also Lopez v. Unisource Worldwide, Inc.,
16    No. 06-cv-6290, 2007 WL 4259587, at *5-6 (N.D. Cal. Dec. 4, 2007)
17    (granting summary judgment in favor of employer where plaintiff
18    sought a reduction in the "normal productivity standards for the
19    warehouseman position" but "offer[ed] no evidence that he was
20    able to perform the duties associated with the conventional
21    warehouse position, with or without reasonable accommodation").

22         Given the complete absence of evidence tending to
23    support plaintiff's argument, "the record taken as a whole could
24    not lead a rational trier of fact to find for the non-moving
25    party," and there is therefore "no genuine issue for trial"
26    concerning whether plaintiff was qualified to perform an
27    available position.  See Matsushita Elec. Indus. Co. v. Zenith
28    Radio Corp., 475 U.S. 574, 587 (1986) (quotation altered); see

1  also <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (summary

2  judgment must be granted where "the nonmoving party has failed to

3  make a sufficient showing on an essential element of [his] case

4  with respect to which [he] has the burden of proof").

5  Accordingly, defendant is entitled to summary judgment on the

6  second claim alleging failure to accommodate under FEHA.

7       C.    <u>Failure to Prevent Discrimination</u>

8       FEHA makes it unlawful for an employer to "fail to take

9  all reasonable steps necessary to prevent discrimination . . .

10  from occurring."  Cal. Gov't Code § 12940(k).  A claim for

11  failure to prevent discrimination is necessarily derivative of a

12  separate claim for actionable discrimination.  <u>See</u> <u>Miller v.</u>

13  <u>Dep't of Corr. & Rehab.</u>, 105 Cal. App. 5th 261, 284-85 (4th Dist.

14  2024).  Because the underlying FEHA claims fail, plaintiff's

15  third claim alleging failure to prevent discrimination likewise

16  fails.  <u>See</u> <u>id.</u>

17  III. <u>Other State Law Claims</u>

18      A.    <u>Wrongful Termination in Violation of Public Policy</u>

19       "[T]o sustain a claim of wrongful discharge in

20  violation of fundamental public policy, [a plaintiff] must prove

21  that his dismissal violated a policy that is (1) fundamental, (2)

22  beneficial for the public, and (3) embodied in a statute or

23  constitutional provision."  <u>Noone v. Hitachi Rail STS USA, Inc.</u>,

24  No. 8:24-cv-00313, 2024 WL 3915075, at *6 (C.D. Cal. June 17,

25  2024) (quoting <u>Turner v. Anheuser-Busch, Inc.</u>, 7 Cal. 4th 1238,

26  1256 (1994)).

27       Plaintiff bases his wrongful termination claim on an

28  underlying violation of FEHA.  (<u>See</u> Compl. ¶ 46; Opp'n (Docket

No. 13) at 17-18.)  But as discussed above, there is no evidence that plaintiff's termination was the result of discrimination and the FEHA claim premised on his termination fails.  Accordingly, defendant is entitled to summary judgment on the fourth claim alleging wrongful termination.  See Arteaga v. Brinks, Inc., 163 Cal. App. 4th 327, 355 (2d Dist. 2008) ("The wrongful termination claim is, after all, based on the FEHA's prohibition of . . . disability discrimination . . . [and] fails for the same reasons as the FEHA claim.").

   B.    IIED

        The elements of a cause of action for intentional infliction of emotional distress ("IIED") are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1001 (1993); Avila v. Willits Env't Remediation Tr., 633 F.3d 828, 844 (9th Cir. 2011) (same).  "Conduct is 'extreme and outrageous' when it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Robles v. Agreserves, Inc., 158 F. Supp. 3d 952, 978 (E.D. Cal. 2016) (quoting Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009); Potter, 6 Cal. 4th at 1001).

        Plaintiff argues that the alleged mistreatment attributed to his supervisor, Mr. Obreno, supports a claim for IIED.  However, there is no evidence of outrageous conduct by Mr.

13

1  Obreno.  Plaintiff's declaration merely states that Mr. Obreno's

2  behavior towards plaintiff "changed noticeably," Mr. Obreno

3  "became distant and less communicative" and tried to remove

4  plaintiff from his shift, and plaintiff "no longer felt supported

5  by him in the workplace."  (Huckins Decl. ¶¶ 12, 15.)  No

6  additional detail or evidence is provided to corroborate these

7  vague assertions.  Even if plaintiff had provided evidentiary

8  support, no reasonable trier of fact could conclude that behaving

9  in a manner that is distant, less communicative, or less

10 supportive rises to the level of "outrageous conduct."

11 Accordingly, defendant is entitled to summary judgment on the

12 fifth claim alleging IIED.

13         IT IS THEREFORE ORDERED that defendant's motion for

14 summary judgment (Docket No. 12) be, and the same hereby is,

15 GRANTED.  The Clerk of Court is directed to enter judgment in

16 favor of defendant and close the case.

17 Dated:  June 24, 2025

18                     WILLIAM B. SHUBB
                       UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

                            14